### 11040

#### BRIDGES v. DANIEL *ET AL.*

(114 S. E., 422)

1. ELECTION OF REMEDIES—VENDOR MAY ON BREACH OF CONTRACT SUE FOR DAMAGES OR FOR SPECIFIC PERFORMANCE.—The successor in interest of a vendor under a contract of sale of land, on breach by the vendee, has a right of election, either to sue for damages for breach of the contract, or sue for specific performance.

2. ACTION—DEFENDANT MAY INVOKE EQUITY TO DEFEAT PLAINTIFF'S LAW ACTION.—That plaintiff elected to bring action at law for damages upon breach does not prevent defendant from invoking equity to show plaintiff was not entitled to relief at law.

Before SEASE, J., Cherokee. February, 1922. Reversed and remanded.

Action by Tom Bridges, against R. A. Daniel, and Wm. Oglesby. Judgment for plaintiff and defendant, Daniel, appeals.

The complaint, answer, report of referee, and appellant's exceptions on appeal omitting formal portion, are as follows:

#### COMPLAINT

Plaintiff alleges:

First. That heretofore the defendant William Oglesby, for value agreed to, and with his co-defendant, R. A. Daniel, to sell his 20 acres of land at an agreed price of $2,000, due and payable December 1, 1920; and assigned said obligation to this plaintiff, for which this plaintiff gave the defendant, William Oglesby, his receipt, and agreed to sell said William Oglesby a tract of land for which said obliga-

tion was a part payment, which receipt was in the following form :

"Received of Bill Oglesby order for $2,000.00 on R. A. Daniel, said $2,000.00 for land sold R. A. Daniel, said $2,000.00 when paid to Tom Bridges to be the first payment on land purchased from Tom Bridges this date. Balance of $5,525.00 to be paid on December 1, 1920, at which time I agree to make good and lawful title to 52½ acres of land, more or less, known as the Oglesby Place and being same purchased from Giles Bridges.

"(Signed) TOM BRIDGES."

Second.  Thereafter, on September 30, 1920, the defendant, R. A. Daniel, accepted and agreed to pay said order in the following manner :

"I hereby agree to pay to Tom Bridges the amount I am due Bill Oglesby on or before December 1, 1920, of the sum of seventy-five dollars discount.

"(Signed) TOM BRIDGES."
"(Signed) R. A. DANIEL."

Third.  That the plaintiff is the owner and holder of said obligation, has demanded of the defendant R. A. Daniel that he pay said obligation and carry out said contract, but the defendant R. A. Daniel has neglected and refused so to do, and is now justly due and owing this plaintiff the sum of $1,925, together with interest thereon from December 1, 1920, at the rate of 7 per cent. per annum.

Fourth.  That the defendant William Oglesby is made a party defendant, by reason of his assignment of said obligation to this plaintiff, and no relief is demanded of him.

Wherefore, plaintiff prays judgment, etc.

ANSWER

The defendant, R. A. Daniel, answering the complaint herein, alleges :

(1) Admits paragraph 1 of the complaint, except that the defendant had until January 1, 1921, to pay the pur-

chase price for the tract of 20 acres, agreed to be conveyed to the defendant by his codefendant, William Oglesby.

(2) Admits so much of paragraph 2 of the complaint as states the language of the agreement signed by this defendant.

(3) Admits so much of paragraph 3 of the complaint as alleges that the defendant refused to pay the sum demanded by the plaintiff, and still refuses to do so. Further answering, and as a first defense, defendant alleges:

(1) That the matter set out in the complaint herein arose out of the following transactions, which were all known to the plaintiff, as follows:

(2) That on August 30, 1920, the following memorandum of a contract was made by and between this defendant and Bill or William Oglesby: "Received of R. A. Daniel five dollars as part payment on my tract of land bounded by lands of J. M. Cash, Giles Oglesby, Swofford and others, containing twenty acres, more or less. I also agree to make good and lawful papers for this land on the 1st day of January, 1921, the balance on this land is to be paid when deed is made. The purchase price is two thousand dollars. All papers is to be paid out of this that is over it." That subsequently, the defendant made a payment of $25 to Bill Oglesby on the purchase contract set out above.

(3) That, as defendant is informed and believes, subsequently to the above date, the plaintiff and Bill Oglesby entered into an agreement of some kind, whether in writing or not the defendant is not fully informed, whereby the plaintiff induced Bill Oglesby to contract for the purchase of a tract of 52½ acres, more or less, which the plaintiff claimed to own, for the sum of $7,525, agreeing to take an order from Bill Oglesby on the defendant for $2,000, and representing, assuring, and agreeing with Bill Oglesby that his brother, Bob Bridges, would

furnish Bill Oglesby with the amount of $5,525 to complete the payment of the purchase price on December 1, 1920.

(4) That thereafter, on or about September 20, 1920, the plaintiff endeavored to procure the acceptance by the defendant of an order alleged to have been drawn on him by Bill Oglesby for $2,000, representing the entire amount of the purchase price of the twenty-acre tract which Oglesby had agreed to convey to the defendant, and at the time represented to the defendant, and assured him that Oglesby would be able to meet the payment of the balance of the purchase price of the 52½-acre tract, and that his brother, Bob Bridges, was going to loan Oglesby the money; but the defendant, having learned that there was a considerable amount of mortgage indebtedness on the 20-acre tract he agreed to purchase from Oglesby, refused to accept such order unconditionally, but to protect himself did execute the following instrument in writing, as follows: "I hereby agree to pay to Tom Bridges the amount I am due Bill Oglesby on or before December 1, 1920, of the sum of seventy-five dollars discount."

(5) That shortly thereafter, the defendant learned that the promise, representations, and assurances made by the plaintiff to Bill Oglesby that plaintiff's brother, Bob, would loan Oglesby the balance of $5,525 to pay plaintiff for the purchase of the 52½-acre tract, whereby Oglesby was induced to agree to purchase said tract, were false and untrue, and were known to be so by the plaintiff at the time he made the same, and were made to induce Oglesby to undertake the purchase of the land, the plaintiff knowing all the time that the money would not be furnished by his brother to Oglesby, and knowing that Oglesby would be utterly unable to raise the balance of the purchase price of plaintiff's tract on or by December 1, 1920, or at any other time; and knowing that Oglesby had no opportunity or resources from which he would be able to comply; and knowing that when Oglesby failed to comply plaintiff would

have both money and land and that Oglesby would be left entirely destitute, without home, money or land.    Said contract was purely speculative.

(6) That thereafter the plaintiff demanded the payment of $1,925 from the defendant, who refused to do so for the reason that so much was not due by him to Oglesby, he having paid Oglesby $5 at the time of making the contract and subsequently $25 more, and for the additional reason that the mortgage indebtedness on Oglesby's 20-acre tract of land amounted to considerably more than $500, which was to be taken out of the purchase price of $2,000.    That another ground of the defendant's refusal to pay the demand of the plaintiff was that the plaintiff, by the false representations and assurances set out above, had induced Bill Oglesby to enter into an agreement which plaintiff knew could not be performed, and which was so inequitable, unjust, and fraudulent that, if defendant paid any part of the order which might have been due, Oglesby would have been absolutely destitute, without home or money, and defendant alleges that advantage was taken of Oglesby by the plaintiff, as Oglesby is an ignorant negro, who has nothing in the world except his little home of 20 acres, mortgaged heavily.

(7) That when defendant refused to comply with the plaintiff's demand for the payment of $1,925, he at once without giving Oglesby any further opportunity to comply with his trade, sold, or put beyond his reach and power to convey, the 52½ acres of land which he had agreed to convey to Oglesby, by selling and conveying the same to some third party; so that, if the plaintiff ever owned the said tract he attempted to convey to Oglesby, which defendant denies on information and belief; by his conduct he has made it impossible for him to comply with his contract with Oglesby, or to enforce any part of the purchase price from Oglesby.

Wherefore the defendant prays for judgment that the complaint be dismissed, and for costs.

## REPORT OF SPECIAL REFEREE

All issues in the above cause were referred to me, with leave to report any special matter. I have held references, took all of the testimony offered by the parties, and have listened to their arguments.

I find that during the summer of 1920, the defendant William Oglesby, colored (and the plaintiff is asking for no relief against Oglesby), executed and delivered to the defendant Daniel a written memorandum, whereby he agreed to sell and convey to Daniel his tract of land, containing 20 acres, by January 1, 1921. At this time land was at its highest, the memorandum recites a cash payment of $5, and a few days thereafter $25 more was paid by Daniel to Oglesby. This memorandum is marked Exhibit H, and no question has been raised about its sufficiency, etc.

After this Tom Bridges has an option to purchase 52½ acres from A. G. Bridges. Maybe he had the option before Oglesby traded with Daniel, but it is immaterial. Tom Bridges had placed this 52½ acres with Willis to sell. While this land was in the hands of Willis to sell, Tom enters into the trade with Oglesby to sell it to him, and he pays to Willis $51 to get it out of his hands. See Exhibit D. Then Tom Bridges sells this land to William Oglesby for $7,525, and William transferred to Tom, the plaintiff, what Daniel owed him on Exhibit H. (This is the memorandum which William gave to Daniel for the sale of his land at $2,000 to be paid January 1st.) The testimony of Tom Bridges shows that he knew that there was a mortgage on the Oglesby land due to Moore at Cowpens for about $180, and, while none of the exhibits mentions it, he stated that it was discussed, and that he was willing, and that it was agreed that Daniel should deduct that from what he

owed Oglesby. Bridges testified that he never saw the contract between Daniel and Oglesby, Exhibit H. In the argument, which was a few months after the taking of the testimony I asked if Tom Bridges knew what the trade was between Daniel and Oglesby, and Daniel's attorney stated that so far as the record showed he did not. When William Oglesby traded with Tom Bridges, Oglesby gives to Bridges an order on Daniel for the balance due him on the purchase price of his land. This order is marked Exhibit C. Tom Bridges then goes to see Daniel. Tom's trade with A. G. Bridges calls for a closing of his deal on December 1st. Daniel is to close with Oglesby on January 1st. Bridges wants Daniel to pay him by December 1st, so he can pay A. G. Bridges. Daniel finally agreed to pay Bridges on December 1st, for a discount of $75, which Bridges agreed to, and Daniel then executed and delivered to Tom Bridges his written memorandum, dated September 20, 1920, wherein he recites that he is to pay to Tom Bridges the amount he is due William Oglesby on or before December 1st. At this time Daniel knew that the defendant Oglesby had transferred and assigned to Tom Bridges all of the purchase price which Daniel was to pay Oglesby for his land, less $30 already paid to Oglesby and the $180 due Moore on his mortgage. The balance was to be paid to Bridges, and Bridges gave Daniel a discount if he would pay it by December 1st.

Daniel testified just before December 1st. "I don't know whether I would have performed my part or not at that time, if the other had complied, for it looked like it was impossible for me to raise $2,000 at that time. I guess I would have tried to have done something if they had carried it out." He also testified that he had told Tom Bridges that he wouldn't take it; that he didn't know if he could get the money; that money had gotten tight, and you couldn't get money at that time. Daniel further said that he knew that Bill had transferred his contract price to

Bridges when he agreed to release Bill; that when he signed Exhibit F, the agreement to pay to Bridges what he owed Oglesby for his land, he thought that he could get the money. The only reason that Daniel gave for not paying the money was because he couldn't get the money. I asked him what other reason he had, and stated that it had been rumored that the title to Oglesby's land was defective. (It was agreed at the last reference, when testimony was offered, that the title could be looked up and a statement filed with the referee. This has been done, and so far as I can ascertain the title has never been questioned till the rumor came up, and Daniel never had it investigated.)

I am satisfied that the only reason Daniel had for not complying was on account of money matters. He never made any effort to have the title examined, till after the beginning of the references. At the time he released Oglesby he knew that what money Oglesby was entitled to had been assigned to Bridges, and he had already promised to pay it to Bridges. Counsel for the defense seemed to think that this was a suit for specific performance, but I inclined to the belief that it is a mere money demand, brought to enforce the payment of Exhibit F. I think that the $30 paid to Oglesby and the $180 mortgage to Moore should be deducted from the $2,000, and that Bridges should have a judgment against Daniel for the balance, with interest. Daniel, not having complied with the terms of his contract, is not entitled to the $75 discount.

## EXCEPTIONS

His Honor erred in not holding that from the pleadings and testimony the action, while apparently upon an instrument for the payment of money, is in reality an action to enforce the payment of an obligation arising out of a contract to convey lands, and the action with the judgment thereon is an attempt to enforce the specific per-

formance of a part of a contract for the sale and purchase of lands, and therefore equitable in its nature.

Erred in not holding that, as the action is one for the enforcement of a part of a contract arising out of a contract for the sale and purchase of lands, the plaintiff could not recover:

(a) Because all of the transactions out of which the written instruments arose were speculative transactions respecting the sales and purchase of lands, the obtaining of options, brokering or assigning the same at a time when land speculation was rife.

(b) Because it appears from the instrument sued on that it was given and accepted as part payment for a tract of land which the plaintiff disposed of before the action was brought, and thereby put it beyond his power to perform the alleged contract of sale, and beyond his power to apply the proceeds of the order sued on the purchase price of the 52½ acres of land agreed to be sold and conveyed by the plaintiff to one William Oglesby.

(c) Because it appears from the testimony that A. G. Bridges, from whom plaintiff had an option, released the plaintiff from his obligation to purchase; that both plaintiff and A. G. Bridges released William Oglesby, who had agreed to purchase the said tract of land; that the defendant also released William Oglesby from a contract to sell defendant 20 acres of land; that on the very day after the date of payment of the obligation sued on, the plaintiff and A. G. Bridges, his optionor, sold and conveyed the land in question to Smith, thereby making it impossible for the obligation sued on to be applied as the first payment on the purchase price of the 52-acre tract contracted to be sold to Oglesby.

(d) Because plaintiff's remedy, if any, was an action for damages for breach of contract.

(3) Erred in not finding and holding that the plaintiff knew, or had knowledge of facts sufficient to put

him on inquiry of the nature of the contract between the defendant and William Oglesby for the purchase of Oglesby's 20-acre tract, and of the terms of said contract; and knew that the defendant was under no obligation to purchase the 20-acre tract from Oglesby until January 1, 1921, and the consummation of the contract between defendant and Oglesby was conditioned on Oglesby's ability to give a good title and to pay off all incumbrances on the land.

(4) Erred in not finding and holding that Oglesby's title was defective, in that the deeds under which he held the 20-acre tract contracted to be sold to defendant were defective, in that there were no witnesses to two of the alleged signers of the deed, and the probate was only as to the execution by a part of the grantors.

(5) Erred in not finding and holding that the 20-acre tract of Oglesby, contracted to be sold to defendant, and out of which the order sued on arose, was subject to the lien of several mortgages as shown by the abstract of title submitted to the referee, one of which was placed on the land by Oglesby on November 27, 1920, just three days prior to the date set for Oglesby to comply with his contract with the plaintiff for the purchase of the 52-acre tract.

(6) Erred in not finding and holding that the extent of the defendant's liability on the order sued on would be the amount stated, less the amount of all judgments and liens on the Oglesby 20-acre tract, and less the amount of any judgments constituting a lien thereon, and less any amount that might be due to be deducted for defective title, and that this is so stated in the order sued on and the contract between defendant and Oglesby.

(7) Erred in not finding and holding that the defendant is entitled to a further deduction of $248.28, and costs, by reason of judgments obtained by the referee, G. W. Speer, as attorney for G. M. Swift against Bill or William Ogles-

by January 17, 1921; and judgment of Gaffney Live Stock Company against Bill or William Oglesby, obtained through the referee as attorney for Gaffney Live Stock Company on April 5, 1921, which judgments were obtained while the references were still open and before the closing of the same.

(8) Erred in not finding and holding that the defendant is entitled to credits of $183.65 and interest due on mortgage by Bill Oglesby to F. N. Moore on the 20-acre tract, dated November 23, 1918, recorded in volume 33, page 282, Public Record of Cherokee County, and also to credit of $555.80 due on mortgage on 20-acre tract, executed to Moore, Swofford & Co., by Oglesby on November 27, 1920, with interest, said mortgage being recorded in volume 37, page 328, of Public Record of the county.

(9) Erred in not holding that, as the title to the 20-acre tract of land of Oglesby, out of which the papers sued on arose, was defective, the defendant was not under any obligation to complete the purchase, and under no obligation to pay the order sued on.

(10) Erred in not holding that, when A. G. Bridges released the plaintiff from his obligation to purchase the 52-acre tract, and when the plaintiff in turn released Bill Oglesby from his contract to purchase the same from or through the plaintiff, such releases discharged all obligations given for the purchase price, and relegated the parties to an action for damages for breach of contract, if there was any; and that when A. G. Bridges and the plaintiff sold and conveyed the 52-acre tract, thereby putting it beyond their power to perform the contract of purchase and sale as to Bill Oglesby and the defendant, and beyond even their readiness and willingness to perform, they thereby lost any remedy they might have had to enforce the payment of any obligation given for the purchase price, or any part thereof.

(11) Erred in not sustaining the exceptions to the referee's report and in not dismissing the complaint.

*Messrs. Butler & Hall,* for appellant, cite: *Time not of the essence of the contract:* 36 Cyc., 713. *Court will not compel acceptance of doubtful title:* 24 S. C., 491. *Vendor having made his performance impossible cannot sue for nonperformance of vendee:* 98 S. C., 400; 39 Cyc., 1388; 1933; 1905, 1909; 88 S. C. 525; 26 Enc., L. 116. *Release of original obligor releases subsequent obligor:* 39 Cyc., 1924. *Speculative trade:* 114 S. C., 245.

*Mr. Cornelius Otts,* for respondent, cites: *Findings of fact in law case will not be reviewed:* 101 S. C., 362; 100 S. C., 452; 103 S. C., 177; 103 S. C., 84. *Exceptions too general to be considered:* 99 S. C., 217; Rule 5, Sup. Ct., Sec. 6; 104 S. C., 52.

*Mr. N. A. Harrison,* for respondent, cites: *Question of title raised too late:* 1 Rich. Eq., 404. *Assignee of chose in action may sue in own name:* 4 Cyc., 36; 1 McC., 219. *No particular form of assignment required:* 4 Cyc., 38; 20 S. C., 123; 1 N. & McC., 249; Riley Eq., 47. *Equitable assignment:* 4 Cyc., 54. *Rights acquired by assignee:* 4 Cyc., 64, 84; 2 Bay 93; 1 Bay 246. *After assignment debtor deals with assignor at his peril:* 4 Cyc., 90, 95. *No set off against assignee, after assignment of debt against assignor:* 12 Johns. (N. Y.), 343. *Court will not try title:* 1 Rich. Eq., 409; 59 S. C., 350; 5 Rich. Eq., 370.

November 2, 1922.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

One of the questions to be determined is whether the issues raised by the pleadings are legal or equitable in their nature.

The complaint, the answer, the report of the special referee, which was confirmed by the Circuit Court for the reasons therein stated, and the appellant's exceptions on the appeal from the order of the Circuit Court will be reported.

In his report the special referee says:

"Counsel for the defense seem to think that this was a suit for specific performance, but I am inclined to the belief that it is a mere money demand, brought to enforce the payment of Exhibit F, which is as follows: 'September 20, 1920. I hereby agree to pay to Tom Bridges the amount I am due Bill Oglesby on or before December 1st, 1920, of the sum of seventy-five dollars discount. (Signed) Tom Bridges. R. A. Daniel.'"

The plaintiff had the right of election, either to bring an action to recover damages for breach of the contract, or to invoke the aid of the Court in the exercise of its chancery powers. *Singleton v. Cuttino,* 107 S. C., 465, 92 S. E., 1046.

Conceding that he elected to bring an action at law, to recover damages for breach of the contract, this did not prevent the defendant from invoking the aid of the Court in the exercise of its chancery powers, for the purpose of showing that the plaintiff was not entitled to relief on the law side of the Court. It seems that the special referee did not decide the equitable issues raised by the answer. This was error. He should have passed upon them. Under these circumstances, this Court will consider them in the first instance, but will remand the case for a new trial in accordance with these conclusions.

Reversed.

MR. JUSTICES FRASER and MARION concur.

MR. JUSTICE COTHRAN (dissenting): This is an action of novel impression, growing out of the following facts which appear to be conceded on all sides:

The defendant Oglesby, a colored man, had been, prior to the year 1920, the owner of a small farm upon which he lived, containing 20 acres.

A. G. Bridges, referred to as Giles Bridges, a white man, a distant kinsman of the plaintiff, Tom Bridges, owned a farm of 52½ acres.

On July 22, 1920, the plaintiff Tom Bridges and Giles Bridges entered into a contract for the purchase and sale of the 52½ acres owned by Giles Bridges, the purchase price agreed upon being $6,750, $100 payable cash and the remainder $6,650 payable on December 1, 1920. Upon this balance it appears that Tom Bridges, prior to December 1, 1920, the maturity date of his obligation, paid to Giles Bridges the sum of $550.00 in addition to the $100 cash payment, leaving a balance due of December 1, 1920, of $6,100.

On August 30, 1920, the defendants Daniel and Oglesby entered into a contract for the purchase and sale of the 20 acres owned by Oglesby, the purchase price agreed upon being $2,000, payable on January 1, 1921. It appears that at the time this contract was entered into, there was an outstanding mortgage upon the tract, executed by Oglesby in favor of one F. N. Moore, to secure the payment of a note for $183.65, dated November 23, 1918, and we assume past due. This fact is not specifically stated in the contract between Daniel and Oglesby, but it is undisputed and explains an occult expression contained in it. "All papers is to be paid for out of this that is over it," evidently meaning that whatever incumbrances existed upon the land were to be satisfied by Daniel out of the $2,000 purchase price.

On September 18, 1920, the plaintiff, Tom Bridges, who only held a contract with Giles Bridges for the purchase of the 52½ acres, as above recited, and Oglesby, entered into a contract for the purchase and sale of the 52½ acres, the purchase price being $7,525 (an advance of $775 over the price $6,750, which Tom Bridges was under contract to pay Giles Bridges), payable $2,000 in an order drawn by Oglesby upon the defendant Daniel for the purchase price of the 20-acre tract, and the remainder $5,525, payable on December 1, 1920. Accordingly Oglesby delivered to Tom Bridges a paper of the following tenor:

September 18, 1920.

"Order for $2,000.00 against R. A. Daniel by Bill Oglesby for land purchased from Bill Oglesby by said Daniel. Pay to Tom Bridges or order $2,000.00 amount due me for 20 acres of land.

(Signed) Bill Oglesby."

Thereupon Tom Bridges delivered to Oglesby a paper of the following tenor, without date, but evidently executed at the same time, September 18, 1920:

"Received of Bill Oglesby order for $2,000.00 on R. A. Daniel, said $2.000.00 for land sold to R. A. Daniel, said $2,000.00 when paid to be first payment on land purchased from Tom Bridges that date. Balance of $5,525.00 to be paid on December 1, 1920, at which time I agree to make good and lawful titles to 52½ acres of land more or less, known as the Oglesby place, and being the same purchased by me from Giles Bridges.

"(Signed) Tom Bridges."

On September 20, 1920, two days thereafter, Tom Bridges presented the order above referred to to Daniel for his acceptance. Daniel did not accept it unconditionally, but delivered to Tom Bridges a paper of the following tenor:

"I hereby agree to pay to Tom Bridges the amount I am due Bill Oglesby on or before December 1, 1920, of the sum of seventy-five dollars discount.

"(Signed) Tom Bridges.

"R. A. Daniel."

It is not explained why Tom Bridges should also have signed this paper, payable to himself. Evidently, as the testimony makes clear, the phrase "of the sum of $75 discount" means "off" or "less" the sum stated, as the obligation of Daniel to Oglesby was not due until January 1, 1921, and Tom Bridges agreed to allow Daniel a discount of $75 for accelerating the payment to December 1, 1920, that being the maturity date of the obligation of Tom

Bridges to Giles Bridges for the purchase price of the 52½ acres.

It appears that after the contract between Oglesby and Daniel for the 20 acres was entered into, Daniel paid to Oglesby upon it $30 in cash; that as stated there was an outstanding mortgage in favor of Moore for $183.65 dated November 23, 1918; and that on November 27, 1920, Oglesby executed another mortgage upon the 20 acres to Moore Swofford & Co., to secure a note for $555.30; so that on December 1, 1920, the amount which Daniel was due to Oglesby was $2,000, less the $30 cash paid and the two mortgages above referred to with interest.

As the time drew near for the completion of the three contracts: (1) Between Daniel and Oglesby; (2) between Tom Bridges and Giles Bridges; and (3) between Oglesby and Tom Bridges (in each instance the vendee being first named), all of them practically maturing on the same day, December 1, 1920, it was ascertained that Daniel could not comply with his contract with Oglesby, for the reason that he could not raise the money; that Tom Bridges could not comply with his contract with Giles Bridges, for the reason that he was unable to collect from Daniel the amount which he had agreed to pay to Tom Bridges upon his (Daniel's) contract with Oglesby; and that Oglesby could not comply with his contract with Tom Bridges for the reason that he could not raise the money.

Accordingly Daniel and Oglesby agreed to rescind their contract; this, however, without the acquiescence of Tom Bridges, who held Daniel's agreement to pay what he owed Oglesby upon the contract for the 20 acres; Tom Bridges and Giles Bridges agreed to rescind their contract by which Tom Bridges was to purchase the 52½ acres, although prior to this rescission Tom Bridges was insisting upon Daniel's compliance with his agreement so that he could comply with his contract with Giles Bridges.

A short while before December 1, 1920, Giles Bridges, anticipating that Daniel would fail to comply with his agreement, and that consequently Tom Bridges would fail to comply with his contract with him (Giles Bridges), entered into a contract with one Smith for the sale and purchase of the 52½ acres in the event that his apprehensions should be realized. Accordingly after Tom Bridges had failed to comply with his contract with Giles Bridges and with the acquiescence of Tom Bridges, the contract between Giles Bridges and Smith, conditionally entered into as stated, was consummated by the conveyance of the land, the 52½ acres, by Giles Bridges to Smith.

On December 23, 1920, Tom Bridges instituted this action against Wm. Oglesby and R. A. Daniel. It is alleged in the complaint that Oglesby was made a party for the reason that he had assigned the obligation of Daniel to pay the amount due by him to Oglesby to the plaintiff Tom Bridges, and, specifically, that no relief is demanded against Oglesby. The cause of action against Daniel is based upon the agreement of September 20, 1920, by which Daniel obligated himself to pay to Tom Bridges "the amount I am due Bill Oglesby" on or before December 1, 1920, less the discount of $75 agreed upon, which is alleged to be $2,000, less $75, $1,925, with interest from December 1, 1920, at 7 per cent. Oglesby made no answer to the complaint, as there was no necessity for him to do. Daniel, however, did, and vigorously denies his liability upon the agreement for various reasons which need not be repeated here, but are sufficient to form a basis for the conclusions announced.

The case was referred to a special referee, G. W. Speer, Esq., to hear and determine all issues. In his report, which will be incorporated in the report of the case, he recommends that Daniel be allowed credit for the $30 in cash paid by him to Oglesby and for the amount of the outstanding Moore mortgage, $180, and that the plaintiff Tom Bridges

be allowed judgment for the balance ($2,000, less $210) $1,700, with interest. Upon exceptions to this report the Circuit Judge passed a formal order, sustaining the referee's report and rendering judgment in favor of the plaintiff for $1,790 with interest from January 1, 1921. From this judgment the defendant Daniel has appealed upon numerous exceptions, which need not be repeated here or considered separately; they sufficiently present the grounds for the conclusion herein announced.

Oglesby held an executory contract with Daniel by which Daniel was obligated to pay him the agreed purchase price of the 20 acres on January 1, 1921, upon a tender of a deed thereto by Oglesby. He had the right of course to assign to Tom Bridges his interest in that contract which was burdened with his (Oglesby's) obligation to tender a deed. The order which he gave Tom Bridges on Daniel was practically an assignment of his pecuniary interest in the contract. The assignee could acquire no higher rights than his assignor had, and if Tom Bridges wished to realize upon his assignment it was incumbent upon him to force a tender by Oglesby to Daniel of a deed to the premises, for that was the measure and condition of Oglesby's right prior to the assignment. Oglesby could not have sued upon Daniel's obligation to him without tendering a deed, and so Tom Bridges standing in Oglesby's shoes was under the obligation of having Oglesby tender the deed to Daniel. He has made no attempt to do this; in fact, relieves Oglesby specifically from his complaint of all responsibility in the matter.

But, assuming that Tom Bridges had brought an action against both Oglesby and Daniel for the purpose of compelling Oglesby to tender a deed and Daniel to comply by paying the agreed purchase price, an insuperable obstacle to recovery by him lies in the fact that the order of Oglesby upon Daniel and Daniel's conditional acceptance of it are inseparably linked up with the contract between Tom Bridges and Oglesby, whereby Tom Bridges agreed to accept

the order when paid as a credit upon Oglesbys obligation to him under the contract between them for the sale and purchase of the 52½ acres, and Tom Bridges, by rescinding the trade between him and Giles Bridges and acquiesing in the sale from Giles Bridges to Smith, has made it impossible for him to comply with his trade with Oglesby, and hence the consideration for Daniel's engagement to Tom Bridges has failed. To allow Tom Bridges to recover the $2,000 from Daniel would result in the anomalous situation that Tom Bridges will have received $2,000 (less $210.00) without complying with the contract, which was the consideration for that engagement.

The judgment should be reversed, and the complaint dismissed.